**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL MANDRALL,

                              Plaintiff,

              - v -                                        Civ. No. 9:07-CV-413
                                                                  (LEK/RFT)
JOSEPH T. SMITH, Superintendent;
KAY KNOTT, Deputy Superintendent;
and DR. GENOVESE,

                              Defendants.


**APPEARANCES:**                              **OF COUNSEL:**

MICHAEL MANDRALL
Plaintiff, *Pro Se*
02-A-2253
*Last Known Address*:
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. ANDREW M. CUOMO                          ADRIENNE J. KERWIN, ESQ.
New York State Attorney General               Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**[1]

        In this civil rights claim, brought pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Michael

Mandrall alleges that his Eighth Amendment rights were violated when he was denied adequate

medical care.  Dkt. No. 2, Compl. at p. 4.  Presently before the Court is Defendants' Motion for

---

[1] This case was transferred from the Eastern District of New York on April 18, 2007, and referred to this Court
for a Report-Recommendation on November 30, 2008.  *See generally* Dkt. Rep.

Summary Judgment, Dkt. No. 49, to which Plaintiff has filed no opposition.  On November 28, 2008, Plaintiff was ordered to file a response to the Defendants' Motion no later than January 20, 2009.  Dkt. No. 49.  After that deadline passed, the Court, on February 2, 2009, *sua sponte* gave Plaintiff an extension until March 15, 2009, to file a response in opposition to the Defendants' Motion.  Dkt. No. 50.  To date, the Court has received no response from Plaintiff.[2]

For the reasons that follow, it is recommended that the Defendants' Motion be **granted** in its entirety.

## I.  BACKGROUND

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.l.  The Local Rules state that "[a]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  N.D.N.Y.L.R. 7.1 (a)(3).  In our February 9, 2009 Order extending Plaintiff's time to file a response to the Defendants' Motion, we specifically warned Plaintiff that "**failure to oppose Defendants' Motion will result in this Court accepting the facts set forth by Defendants as true.**"  Dkt. No. 50 (citing N.D.N.Y.L.R. 7.1(a)(3)) (emphasis in original).  As previously mentioned, Plaintiff has not filed a response to the Defendants' Motion for Summary Judgment, and therefore, we will accept as true the facts alleged in Defendants' 7.1 Statement.

In December 2006, Plaintiff noticed "little black things" in his cell at Shawangunk Correctional Facility ("Shawangunk").  Dkt. No. 49, Defs.' 7.1 Statement at ¶ 2.  Plaintiff reported the presence of the little black things to an officer at Shawangunk, who notified his supervisor.  *Id.*

---

[2] The Court takes judicial notice that on July 1, 2009, Plaintiff was conditionally released on parole from Green Haven Correctional Facility.  Information *available at* http://nysdocslookup.docs.state.ny.us (lasted visited Aug. 13, 2009).  Plaintiff has not updated his address since his transfer to Green Haven in 2007.  Dkt. No. 32.

at ¶ 3.  Thereafter, Plaintiff was provided cleaning materials and directed to clean his cell and mattress.  *Id.* at ¶ 4.  Plaintiff made several complaints to Defendant Superintendent Smith and other Department of Correctional Services ("DOCS") officials about the alleged infestation and the physical ailments that it allegedly caused him.  *Id.* at ¶ 5.  Although Smith never saw any little black things, he nonetheless directed that Plaintiff be given a new mattress and pillow, but Plaintiff still continued to see the little black things in his cell.  *Id.* at ¶¶ 6-7.

Defendant Deputy Superintendent Knott investigated and responded to many complaints written by Plaintiff about the alleged infestation to Superintendent Smith and other DOCS officials. *Id.* at ¶ 8.  In response, Knott directed that Plaintiff be provided with new linens and clothing, given germicidal cleaning supplies for his cell, and had his cell checked by Shawangunk's exterminating vendor on at least two occasions.  *Id.* at ¶¶ 10-11.  The vendor found no evidence of bugs or infestation in Plaintiff's cell, but still suggested that Plaintiff's clothing and linen be washed and his cell disinfected again, all of which was done.  *Id.* at ¶ 15.  Plaintiff was continuously examined by Shawangunk health staff as well as outside medical consultants.  *Id.* at ¶ 12.  Medical personnel never found any evidence of bug bites nor any other condition caused by parasites or infestation. *Id.* at ¶ 18.

After cleaning his cell for about two weeks, Plaintiff developed a rash.  *Id.* at ¶ 19.  About one week after first developing the rash, Plaintiff saw Defendant Dr. Genovese, who prescribed him medication for pain.  *Id.* at ¶¶ 20-21.  After seeing Plaintiff for approximately one month, Dr. Genovese scheduled Plaintiff to see a dermatologist for his rash; the dermatologist prescribed Plaintiff mental health medication and lotion for his skin.  *Id.* at ¶¶ 22-23.  On three or four occasions, Plaintiff saw blood on his pillow, but upon examining Plaintiff's head, Dr. Genovese did

not find anything wrong nor any explanation for the blood on his pillow. *Id.* at ¶¶ 24-25. Plaintiff's rash lasted about four weeks. *Id.* at ¶ 26.

In January 2007, Plaintiff began experiencing pain all over his head. *Id.* at ¶ 27. Dr. Genovese examined him, but found no medical reason for Plaintiff's complaints of head pain and referred him to a mental health professional. *Id.* at ¶¶ 28-29. Dr. Genovese prescribed Plaintiff different pain medications over a period of about six months and also sent Plaintiff to a neurological consultant, who found nothing wrong. *Id.* at ¶¶ 30-32. From January 2007 through June 2007, Dr. Genovese saw Plaintiff approximately once every two or three weeks; Plaintiff was also seen during that period by nurses and physician's assistants. *Id.* at ¶¶ 33-34.

In or about February 2007, Plaintiff developed a cyst on his head and felt something in his eye. *Id.* at ¶¶ 35 & 38. Dr. Genovese prescribed Plaintiff a sulfate medication, which resolved the cyst, and referred Plaintiff to an optometrist, who identified two spots on Plaintiff's eye as medically insignificant. *Id.* at ¶¶ 37-38.

Finally, in or about March 2007, Plaintiff reported to Dr. Genovese that his head was shrinking, though he acknowledged it did not visibly appear smaller, prompting Dr. Genovese to again refer him to a mental health professional. *Id.* at ¶ 39. Due to Plaintiff's deteriorating mental health, he was sent to the Sullivan Correctional Facility ("Sullivan") Mental Health Unit on or about May 3, 2007, where his mental health status was upgraded to Level One, which is reserved for inmates with the most severe mental health issues. *Id.* at ¶¶ 44-45. Since Shawangunk is not equipped to handle Level One inmates, Plaintiff was formally transferred to Sullivan on June 22, 2007. *Id.* at ¶ 46. In June 2007, Plaintiff saw a physician and physician's assistant at Sullivan about his head pain; neither health care provider found anything medically wrong with him. *Id.* at ¶ 47.

*-4-*

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "'pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B. Eighth Amendment Claims

### 1. *Deliberate Indifference to Serious Medical Needs*

Reading his Complaint liberally, Plaintiff appears to allege that Defendant Dr. Genovese violated his Eighth Amendment rights by failing to properly diagnose and treat his symptoms or alleged ailments. Compl. at p. 4.

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an

objective standard and considers whether the medical condition is sufficiently serious.  The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)).  Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness.  *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm.  *Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).  Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

In this case, Plaintiff alleges he suffered from the following conditions: marks on his body, pain in his body and all over his head, two "black specs" in his right eye, and a deformed head.

Compl. at p. 4.  Although we doubt that any of these alleged conditions constitute serious medical conditions under the Eighth Amendment, we need not address that question because it is clear that Dr. Genovese did not act with deliberate indifference to Plaintiff's needs.

From December 2006 through June 2007, Dr. Genovese personally examined or attempted to examine Plaintiff on the following dates: December 12, 2006; December 28, 2006; March 6, 2007; March 28, 2007; April 12, 2007; June 4, 2007; and June 26, 2007.  Dkt. No. 49, Maryann Genovese, M.D., Decl., dated Nov. 26, 2008, at ¶ 6.  At no time did Dr. Genovese observe bug bites or other evidence of infestation on Plaintiff's body, although at times Plaintiff had red papules[3] on his neck, shoulder, back and/or chest areas, but these small bumps are "common and are not indicative of any type of bite or skin infection."  *Id.* at ¶ 9.  Plaintiff was prescribed lotions, ointments, and pain medication to remedy his papules.  *Id.* at ¶ 10.  Dr. Genovese ordered a dermatological consultation on January 17, 2007.  Dkt. No. 49, Defs.' Mot. for Summ. J., Ex. A, Pl.'s Med. Rec. at entry dated Jan. 17, 2007.  On February 7, 2007, Plaintiff was seen by a dermatologist who opined that Plaintiff suffered from a delusion of parasitosis, a mental health condition that causes individuals to believe they are infected with parasites or have bugs crawling on them.  Genovese Decl. at ¶ 11; Pl.'s Med. Rec. at Consultation Rep., dated Feb. 7, 2007.  The dermatologist prescribed Plaintiff lotion.  *Id.*

On January 29, 2007, Dr. Genovese saw Plaintiff for an unscheduled examination because Plaintiff reported black specks in his eye and a black substance coming out of his hair.  Genovese Decl. at ¶ 12.  Dr. Genovese examined Plaintiff, observing no substance coming out of his hair and a few red areas and papules on Plaintiff's scalp, face, chest and back, "particularly in hairy areas."

---

[3] A "papule" is "[a] small, solid, usually inflammatory elevation of the skin that does not contain pus."  THE AMERICAN HERITAGE MEDICAL DICTIONARY 598 (Rev. ed. 2007).

*Id.* Dr. Genovese found no foreign body in Plaintiff's eye, but nonetheless ordered an optometry consultation. *Id.* She also prescribed bacitracin ointment and ordered that Plaintiff receive blood work, which yielded normal results. *Id.*; Pl.'s Med. Rec. at entry dated Jan. 29, 2007 & Blood-work Rep., dated Jan. 31, 2007.

On March 15, 2007, Dr. Genovese ordered that Plaintiff undergo a neurological examination with a consultant and have additional blood-work done. Genovese Decl. at ¶ 15; Pl.'s Med. Rec. at entry dated Mar. 15, 2007. Plaintiff's Medical Record reflects that on March 22, 2007, he complained something was eating away at his head causing him pain and suggested that he might have contracted H. Pylori from the water. Pl.'s Med. Rec. at entry dated Mar. 22, 2007. In response, Dr. Genovese prescribed Plaintiff new pain medication. *Id.*; Genovese Decl. at ¶ 16.

Dr. Genovese saw Plaintiff again on March 28, 2007, for an unscheduled visit and, upon examining him, observed scabs on his head caused by scratching. Genovese Decl. at ¶ 17. Dr. Genovese cleaned the indicated areas and prescribed Plaintiff ointment and dandruff shampoo. *Id.*; Pl.'s Med. Rec. at entry dated Mar. 28, 2007. During a visit with Dr. Genovese on April 12, 2007, Plaintiff complained that his head was being deformed but, upon examination, Dr. Genovese found nothing abnormal about Plaintiff's head. Genovese Decl. at ¶ 18; Pl.'s Med. Rec. at entry dated Apr. 12, 2007. Plaintiff was seen by a neurologist on May 2, 2007, who found no medical problems and recommended treatment for delusions. *Id.* at ¶ 19; Pl.'s Med Rec. at Consultation Rep., dated May 2, 2007.

Dr. Genovese saw Plaintiff again on June 4, 2007, and prescribed pain medication for his complaints of head pain. Genovese Decl. at ¶ 20. On June 18, 2007, Dr. Genovese ordered that Plaintiff be transported to the emergency room of an outside hospital where he was seen for chest

pain. *Id.* at ¶ 21; Pl.'s Med. Rec. at entry dated June 18, 2007 (noting that Plaintiff was sent to "St. Luke's E.R. . . . as per M.D. Genovese") & St. Luke's Discharge Summ., dated June 21, 2007 (diagnosing Plaintiff with "atypical chest pain" and noting that his condition upon release was "stable"). On May 3, 2007, Plaintiff was taken to Sullivan's Mental Heath Unit for an evaluation. Genovese Decl. at ¶ 22. He returned to Shawangunk on May 7, 2007, and was soon thereafter transferred permanently to Sullivan, a Level One Mental Health Facility. *Id.* at ¶ 22.

The aforementioned summary of Plaintiff's interactions with Defendant Dr. Genovese and other medical personnel confirms that all of Plaintiff's medical complaints were taken seriously and responded to appropriately. In addition to prescribing Plaintiff medication for his various ailments, Dr. Genovese ordered that Plaintiff receive outside consultations for his eyes, skin, chest, and mental health, and also ordered that he receive blood-work on at least two occasions. In sum, there is nothing in the record evincing a deliberate indifference to Plaintiff's health on the part of Dr. Genovese. Therefore, it recommended that his claims against Dr. Genovese be **dismissed**.

### 2. *Conditions of Confinement*

Plaintiff alleges that his medical conditions were caused by "microorganisms in the water" that "develop into parasites" once inside his body. Compl. at ¶ 4. In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

Plaintiff has offered no evidence, and there is nothing in the record to suggest, that the water at Shawangunk was contaminated or otherwise insalubrious. In that respect, Defendant Joseph T.

*-10-*

Smith, Superintendent at Shawangunk, affirms that "the water at Shawangunk was routinely tested during the period that the plaintiff was there, and no pathogens were ever found in the water." Dkt. No. 49, Joseph T. Smith Decl., dated Nov. 21, 2008, at ¶ 19.  Nor is there any evidence that Plaintiff complained about the water to any Defendant besides Dr. Genovese, who as a doctor was not responsible for the facility's water maintenance.  *Id.* at ¶ 19 (stating that "plaintiff never brought to my attention any alleged problem with the water at Shawangunk"); Dkt. No. 49, Kay Knott Decl., dated Nov. 25, 2008, at ¶ 14 (same).  Therefore, it is recommended that this claim be **dismissed**.

To the extent Plaintiff seeks to bring a claim based on an alleged insect infestation in his cell,[4] that claim must also fail because "[e]ven if the conditions of confinement were found to be unreasonable as a matter of law, a plaintiff cannot survive summary judgment unless he can point to 'record evidence creating a genuine dispute' as to the facts regarding Defendants' culpable mental state." *Summerville v. Faciuna*, 2009 WL 2426021, at *9 (W.D.N.Y. Aug. 6, 2009) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 282 (2d Cir. 2006)).  Plaintiff points to no such evidence in this case, and in fact, the evidence of record belies any claim of deliberate indifference on the part of the Defendants.

Defendant Deputy Superintendent Knott declares that Shawangunk officials became aware of Plaintiff's complaints of infestation on November 29, 2006.  Knott Decl. at ¶ 4.  Thereafter, Plaintiff was provided a new mattress and pillow, as well as germicidal cleaner to clean his cell, which he did at least two times.  *Id.* at ¶ 5.  Also, all of Plaintiff's clothing and linens were washed on two separate occasions in the facility laundry.  *Id.*  In addition, Knott contacted Shawangunk's

---

[4] We note that in his Complaint, Plaintiff appears to state that the water contamination was what caused his physical ailments, and that such situation "was covered up by saying it had something to do with external infestation." Compl. at p. 4.  Thus, Plaintiff does not appear to allege that an insect infestation was the cause of any alleged injury.

exterminating vendor to investigate Plaintiff's claims.  Initially, the vendor thought that there might be fleas in the cell, and bait was placed in Plaintiff's cell.  *Id.* at ¶ 6.  However, after Plaintiff continued to complain about the alleged infestation, the vendor was called a second time to investigate and no bugs or any infestation were found.  *Id.*  Finally, two samples of bugs that Plaintiff gave to medical staff were given to Knott, who turned them over to the facility's exterminating vendor for testing.  The vendor later reported that neither sample contained insects. *Id.* at ¶ 7;  Dkt. No. 49, Adrienne J. Kerwin, Esq., Affirm., Ex. F, Lt. from Exterminator, dated Feb. 19, 2007.

Defendant Smith declares that from December 2006 through June 2007 he received several letters of complaint from Plaintiff about the alleged infestation in his cell, all of which were appropriately responded to and the steps taken by Shawangunk officials to address Plaintiff's concerns were documented.  Smith Decl. at ¶¶ 6-18; *see also* Kerwin Affirm., Exs. B, D, E, F, I, K, & BB, Resp. Lts. from Smith to Pl., dated Dec. 17, 2006; Jan. 30, 2007; Feb. 12,  2007; Feb. 21, 2007; Mar. 2, 2007; Mar. 29, 2007; & May 23, 2007.

Thus, the record shows that appropriate steps were taken in response to Plaintiff's complaints of insect infestation in his cell.  Because nothing in the record before us suggests that any Defendant exhibited a deliberate indifference to Plaintiff's living conditions, we recommend that this claim be **dismissed**.[5]

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 49) be

---

[5] Because Plaintiff's underlying claims have been recommended for dismissal, to the extent Plaintiff asserted claims based on supervisory liability, those claims should also be **dismissed**.

**GRANTED** and the Complaint (Dkt. No. 1) **DISMISSED**; and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   August 28, 2009
       Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge